Luke Andrew Busby, Ltd.
Nevada State Bar No. 10319
216 East Liberty St.
Reno, NV 89501
775-453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ADAM WYNN TINGLEY,<br><br>                    Plaintiff(s),<br>        vs.<br><br>DR. R. BRUCE BANNISTER, et al.<br><br>                    Defendant(s).<br>_____/ | Case No. 3:14-cv-000358 MMD-VPC<br><br>**OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**<br><br>**ORAL ARGUMENT REQUESTED** |

    1.    COMES NOW, Plaintiff, ADAM WYNN TINGLEY, by and through the undersigned counsel, and hereby files the following Objections to Magistrate Judge's Report and Recommendations (Doc. 80) (hereinafter "R&R") filed in this matter on June 8, 2016, recommending that the Defendant's Motion for Summary Judgment be granted by the Court.

    2.    The Objections herein are made and based upon all of the pleadings and

records on file for this proceedings together with every exhibit that is mentioned herein or attached hereto (each of which is incorporated by this reference as though it were set forth hereat in haec verba), if any there be, as well as the points and authorities set forth directly hereinafter.

## POINTS AND AUTHORITIES

### I. MAIN RECOMMENDATIONS OF THE R&R

3.     The R&R makes the following three main recommended rulings: (1) Portions of the Plaintiff's claims are barred by the applicable statute of limitations (R&R at page 5 line 12); (2) Defendant R. Bruce Bannister ("Bannister") was not deliberately indifferent to the Plaintiff's serious medical need during the relevant time period (Id. at page 10 line 5); and (3) Plaintiff failed to exhaust administrative remedies for his claim against Defendants John Perry, Kerry McCullah, and Susan Hoffman as it relates to his postoperative care (Id. at page 13 line 5).   The Plaintiff will address these recommendations and the various other arguments made in the R&R in turn below.

### II. THE RUNNING OF THE STATUTE SHOULD BE TOLLED FOR TINGLEY'S CLAIMS AGAINST BANNISTER AS BANNISTER'S DELIBERATE INDIFFERENCE WAS CONTINUING

4.     The R&R recommends that the Court find that portions of the Plaintiff's claims are barred by the applicable statute of limitations (R&R at page 5 line 12), and that the Plaintiff's deliberate indifference claim accrued after each decision by the UR Panel,

triggering the running of the statute of limitations (R&R at page 9 line 16), and as such the continuing violation doctrine should not be applied in this case.   As the R&R states, where a violation is ongoing in nature, the statute of limitations does not begin to run until the wrongful conduct comes to an end. *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002). The R&R also cites *MacGregor v. Dial*, No. 2:13–cv–1883 JAM AC P, 2015 WL 1405492, at *8 (E.D. Cal. Mar. 26, 2015) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) in support of the finding that each discrete act by the Defendants starts a new clock for filing charges under the continuing violation doctrine.

5.     The *Flowers v. Carville* case involved a suit where Flowers claimed to have had an affair with former President Bill Clinton and alleged that James Carville had defamed her and painted her in a false light by stating that she had lied about her relationship with Clinton. *Flowers v. Carville*, 310 F.3d 1118, 1122 (9th Cir. 2002).   The *Flowers* Court held that when a tort involves continuing wrongful conduct, the statute of limitations doesn't begin to run until that conduct ends, but that false light was not a continuing tort because the claim based on each discrete statement, citing *Page v. United States*, 729 F.2d 818, 821 (D.C. Cir. 1984). Nothing in *Flowers* involves an analysis of continuing violations in the context of a Section 1983 claim.

6.     The R&R then cites *AMTRAK v. Morgan*, 536 U.S. 101 (U.S. 2002) and states that the Ninth Circuit has applied *Morgan* to bar Section 1983 claims predicated on discrete time-barred acts, notwithstanding that those acts are related to timely-filed claims, citing

*Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara*, 344 F.3d 822, 829 (9th Cir. 2003).   The R&R concluded its analysis of the continuing violation doctrine by finding that Tingley's is not a case where "no single incident" may be identified as the cause of harm (R&R at page 9 line 15) based on the UR Panel denial dates cited in the Plaintiff's Second Amended Complaint.   The harm that Tingley suffered due to Bannister's denials of Tingley's request for surgery, i.e. the pain and loss of vision complained of due to a lack of treatment for his eye, were not discrete at the points at which Bannister denied Tingley's repeated requests for treatment. The record shows that Bannister allowed Tingley to languish in pain and relative blindness for years whilst he waited for surgery.   Bannister's knowledge of Tingley's condition did not cease to exist when the UR panel denied Tingley's request for surgery. The evidence shows Bannister was on the UR Panel during the time the R&R concedes that Tingley has an otherwise non-time-barred 1983 claim, i.e. post January 10, 2012 (R&R at page 10 line 4), as well as during the time the R&R concludes is time-barred.   The Court should not apply *Morgan* in this case to bar Tingley's claims against Bannister because this is not a case where the discrete act of a UR Panel denial of a request for surgery negates the required elements of deliberation and indifference of an otherwise valid Section 1983 claim, as explained further below.

7.     While the R&R concludes that to the extent that Tingley suffered ongoing harm thereafter, that harm was the continuing impact of the violation and insufficient to toll the statute (R&R at page 9 line 19), the Court provides no explanation under law as to why this

would be the case.  This is not a case where there was a single "impact" that resulted in harm to Tingley, such as a single discrete occurrence of assault.  The "impact" of the denial to treat his condition was Tingley's continuing suffering, which Bannister had within his control the power to correct.  The analysis of Bannister's conduct in the R&R focuses only on his acts but his omissions are ignored.  The basis for Tingley's claim against Bannister is the delay and denial of medical care as a whole, not solely the overt act of denying or delaying treatment through UR panel decisions, which Tingley has identified as particular instances of evidence of knowledge of Tingley's condition.  Because a prisoner's access to medical care is controlled by medical personnel at the prison (in Tingley's case Dr. Bannister), the harm cannot be isolated in the manner suggested by the R&R in the case of ongoing medical issues, such as where a prisoner's Constitutional rights are violated in some other overt fashion for a determinable amount of time, i.e. where a prisoner suffers a discrete harm such as denial of food for a specific period of time or suffers from a single assault.

8.     Inmates have no power to get the attention of the UR Panel, which was the only path that Tingley had to get the relief that he sought from Bannister, other than by filing kites, which as described in the Plaintiff's Opposition to the Defendant's Motion for Summary Judgment, Tingley did numerous times (Doc. 73 at pages 8-9).  UR Panel referrals can come only from prison medical staff, and an inmate can only request to see a physician by filing a kite. By implication of the logic of the R&R's analysis, Bannister ceased to be

deliberately indifferent to Tingley's suffering the moment he, as part of the UR Panel, denied Tingley's request for surgery.  This conclusion is inconsistent with the established fact that Bannister had for essentially the entire time at issue in this case a culpable state of mind as to Tingley's condition, sufficient to constitute a constitutional violation of Tingley's 8th Amendment right to be free from cruel and unusual punishment.  The R&R concludes that while Bannister may not be found liable for those incidents that occurred prior to January 10, 2012, they may properly be considered as evidence of knowledge. (R&R at page 12 line 11)

9.     In sum, even during the limited period in which the R&R suggests that Tingley has a valid non-time-barred claim, Bannister's omission to treat Tingley meets the standard for a 1983 claim as the deprivation of Tingley's rights by Bannister was sufficiently serious, i.e. Tingley was in extreme pain and suffered loss of vision, and Bannister had a sufficiently culpable state of mind by inflicting wanton and unnecessary pain on Tingley by withholding permission for surgery whilst he had knowledge that Tingley was suffering horribly.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

## III.   THE R&R ERRONEOUSLY VIEWS FACTS AND INFERENCES IN A LIGHT MOST FAVORABLE TO BANNISTER, THE MOVING PARTY

10.     The R&R recommends that the Court find that Bannister was not deliberately indifferent to the Plaintiff's serious medical need during the relevant time period (R&R at page 10 line 5).  Under FRCP 56, summary judgment should be granted only if, taking the

evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013).   The R&R states that were a jury to find that Bannister knew of a substantial risk of harm existed, it must also be persuaded that Bannister deliberately disregarded that risk, and did so within the limitations period. (R&R at page 12 line 13).

11.    Again, the R&R concludes that while Bannister may not be found liable for those incidents that occurred prior to prior to January 10, 2012, they may properly be considered as evidence of Bannister's knowledge. (R&R at page 12 line 11)   As a member of the UR Panel, Bannister had a demonstrated and ongoing  knowledge of Tingley's condition going back through 2006, as he was the Medical Director of NDOC from 2006 until June 10, 2013 (R&R at page 11 line 17 citing Doc. 66-4 at 2 and Doc. 73 at 22).  The Plaintiff showed that through his inaction, Bannister deliberately disregarded that risk during the limitations period as he was the medical director for at least part of the period until his retirement in June of 2013.   Thus, under FRCP 56, the Court should draw the reasonable inference that for a period of approximately a year and seven months during the non-time-barred period Bannister knew about Tingley's medical condition and did nothing about it, i.e. Bannister was deliberately indifferent to Tingley's serious medical need.

12.    The R&R states that two requests were sent to the UR Panel on the Plaintiff's behalf between January 10, 2012 and July 10, 2014, which is the time period in which the Plaintiff's claims are not barred by the statute of limitations, according to the R&R.  The first

was submitted on March 4, 2013 by V. VanHornal, and requested Tingley be referred to Dr. Fischer for his pterygium and the UR Panel approved the request eight days later. (R&R at page 12 line 16) Despite a finding that incidents that occurred prior to January 10, 2012 may properly be considered as evidence of Bannister's knowledge, the R&R concludes that, "the undisputed evidence does not support plaintiff's assertion that Bannister acted to delay, deny, or otherwise interfere in plaintiff's treatment." (R&R page 12 line 19).  Unwarranted necessity is placed on the conclusion in the R&R that Bannister did not delay or deny Tingley medical care during the non-time-barred period.  If Bannister had knowledge of Tingley's condition before January 10, 2012, and those incidents may be considered evidence of his knowledge, then Tingley has established that Bannister had knowledge of the Plaintiff's condition during the non-time-barred period after January 10, 2012, in which Bannister did nothing to help the Plaintiff with his condition, i.e. after January 10, 2012 Bannister had a culpable state of mind and continued to delay and deny the Plaintiff adequate medical care.  It is not as if Bannister's knowledge of Tingley's condition would have been wiped clean by the passing of the statute of limitations, nor would Bannister's power to grant Tingley the relief he sought be altered in any way.  The Court should draw this reasonable inference from the facts as described in the R&R that Bannister did have knowledge of the fact that Tingley needed medical care and that Bannister delayed or denied Tingley's access to such care.  There is a genuine issue of material fact for Tingley's case against Bannister because, as described above, there is sufficient evidence for a reasonable

jury to return a verdict for Tingley. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). A reasonable jury could conclude that Bannister knew of Tingley's condition and was deliberately indifferent to his serious medical need.

## IV.   TINGLEY EXHAUSTED HIS ADMINISTRATIVE REMEDIES AS REQUIRED BY THE PLRA AND NDOC'S ADMINISTRATIVE REGULATIONS

### a.) The R&R got a fundamental fact wrong

13.   The R&R recommends that the Court find that the Plaintiff failed to exhaust his claim as it relates to his postoperative care (Id. at page 13 line 5). Factual issues pertaining to the PLRA exhaustion requirement are for the Court to determine. *Pavey v. Conley*, 544 F.3d 739, 741–42 (7th Cir. 2008), cert. denied, 129 S. Ct. 1620 (2009). The R&R finds that, "Even the second-level grievance, filed after the eye drop issue allegedly began, makes no mention of inadequate postoperative treatment." (R&R at page 17 line 22). This conclusion in the R&R is not accurate. The R&R includes a quote from only part of the text of the Plaintiff's second level grievance at page 17 line 9 and ignores the continuation. However, Exhibit L to the Defendant's Motion for Summary Judgment (Doc. 66-13) includes the entire text of the Second Level Grievance submitted by the Plaintiff, which very clearly does raise the issue of "All post care needed" and "any eye drops needed" as follows:

> On 02/19/14, Dr. Komadina did do surgery. This should have been done over 7 years ago! By neglect ion to properly treat me, by not getting me to the first surgery in timely manner and doing nothing you¿ve kept me in severe pain and suffering and under Estelle v. Gamble you¿ve violated my civil rights. I¿ve complained,

my family and our lawyers have complained for years (since 2004), DOC has done nothing. This is last attempt at DOC level to resolve.  For remedies see First Level and Informal. I add now to remedies: All post care needed including pain med (IBU¿s) and any eye drops needed. Dr. Komadina was approved in July 2013 to correct, by surgery my rt. eye. I want that done only by Komadina, if he suggests it. Plus any follow-up care needed.

(Exhibit L to the Defendant's Motion for Summary Judgement, Doc. 66-13 at page 2)

14.     As shown on in Exhibit K to the Defendant's Motion for Summary Judgment (Doc. 66-12), which contains only the first page of the grievance, Tingley signed the Second Level Grievance quoted above on February 27, 2014.  A complete copy of Tingley's Second Level Grievance is attached hereto as Exhibit 1.  This is precisely the time period shortly after his February 19, 2014 surgery in which Tingley was being denied his critical post-operative eye drops as insistently prescribed by Dr. Komadina as described in Tingley's Opposition to the Motion (Doc. 73 pages 13-16).  As indicated in Doc. 66-12, Tingley did not receive the response to this Second Level Grievance until April 22, 2014, nearly two months after filing the grievance and much too late for Tingley to receive the eye drops that could have prevented his surgery from failing, according to the testimony of Dr. Komadina. While AR 740.03(10) requires that: "Comprehensive responses are required for inmate grievances. Statements such as 'Your grievance is denied.' are not acceptable. An explanation is necessary."  The response to the Second Level Grievance consists of two sentences that do not address or respond to Tingley's complaints about eye drops and postoperative treatment stating: "You have received the surgery by Dr. Komadina and are scheduled for

follow up appointments. The matter of your eye surgery has been resolved. Grievance denied." (Doc 66-13 page 2)

**b.) The R&R's analysis of the ARs related to the grievance procedure begs the question as to what use of the term "specific" means**

15.     The R&R recommends that the Court find that the Plaintiff's interpretation of the AR that subjects prisoners to disciple for filing multiple grievances for the same issue wholly ignores the word "specific," and severely limits an inmate's ability to alert prison officials of new concerns.  (R&R at page 18 line 7).  AR 740.09(2)(B) states that it is abuse of the inmate grievance procedure to file a grievance on "Specific claims or incidences previously filed by the same incident."  Here, the R&R includes the conclusion it reaches as a premise in its argument.  While the R&R states that the Plaintiff essentially misread AR 740.09(2)(B) and ignores the use of the word "specific," the use of the word "specific" does not add any substantive meaning to the sentence in AR 740.02(2)(B) and does not demarcate where exactly the line is to be drawn between one "specific" incident and the next for purposes of the subject of a grievance.  Nor is the ambiguous term "specific" otherwise defined in the ARs.  The level of detail necessary in a grievance to comply with the grievance procedures are subject to the requirements in NDOC's ARs and not the PLRA.  *Jones v. Bock*, 549 U.S. 199, 218 (U.S. 2007).  AR 740.03(1), which relates to "Grievance Issues," broadly states the level of detail necessary as follows:

> Inmates may use the Inmate Grievance Procedure to resolve addressable inmate claims including, but not limited to, personal property, property damage, disciplinary appeals, personal injuries, and any other tort claim or civil

rights claim relating to conditions of institutional life.

(See Exhibit M to Defendant's Motion for Summary Judgment (Doc. 66-14 page 3)

By complaining in his filed grievances about the time delay in getting surgery and his postoperative care the Plaintiff was still complaining about the same "specific" issue, i.e. lack of adequate treatment by NDOC for his pterygium, and thus Tingley complied with NDOC's grievance procedure as written.

16.     Under the analysis in the R&R, Tingley could have been required file separate grievances for each minor discrete act that comprised his claim, which arguably could have let to his filing hundreds of separate grievances, such as each occasion where he was denied eye drops by each individual corrections officer or medical personnel, which most certainly would have led to Tingley being disciplined under AR 740.02(4) and (5).  Ambiguity in exhaustion regulations is a problem because prisoners do not have sufficient guidance on the appropriate course of action. (citing *Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005) (when prison officials fail to "clearly identif[y]" proper route for exhaustion, they cannot later fault prisoner for failing to predict correct choice). *Shaw v. Jahnke*, 607 F. Supp. 2d 1005, 1009 (W.D. Wis. 2009).  As explained above, NDOC's response to Tingley's Second Level Grievance does not address his request for postoperative care. This Court should not read ambiguity in NDOC's ARs against Tingley to require extraordinary exhaustion beyond what NDOC's own rules require.  The exhaustion requirement in 42 USCS § 1997e(a), nor NDOC's ARs, should not be so literally read to produce the absurd result and requirement

that prisoners grieve each instance in an overall series of events that constitutes a violation of a Constitutional right. While the plain language of a statute is not always conclusive, a Court should ignore plain language only when a literal interpretation would thwart the purpose of the overall statutory scheme or lead to an absurd result. *United States ex rel. Barajas v. United States*, 258 F.3d 1004, 1012 (9th Cir. Cal. 2001).

17.     The R&R concludes that the specter of discipline for the Plaintiff is without merit and that in the event that an inmate commits an "abuse of the inmate grievance procedure," AR 740.09(3) and (4) instruct the caseworker to return the improper grievance to the inmate, along with a memorandum describing the violation. (R&R at page 18 line 14). However, this is not the only consequence that a prisoner will face for filing an AR that NDOC determines is an abuse of the grievance procedure. AR 740.09(5)(A) through (G) provides for a specific  disciplinary process if inmates violate the grievance procedure. This is not a "spectre" of discipline as described in the R&R, it is a very real threat of discipline. Even though Tingley did exhaust his administrative remedies as described above, assuming arguendo that he did not, the PLRA does not require exhaustion when circumstances render administrative remedies effectively unavailable. *Nunez v. Duncan*, 591 F.3d 1217, 1223 (9th Cir. Or. 2010). As argued above, there is no evidence in the record that Tingley was ever directed by NDOC to file a separate grievance to have the issue of his postoperative eye drops addressed, which under the R&R's analysis of the grievance procedure, should have occurred.

18.     The reading of the ARs in the R&R ignores the reality of the incentive structure at work when prisoners seek redress for constitutional violations as required by the Prison Litigation Reform Act, i.e. the persons who work for the organization, and members of that organization, that prisoners seek to sue for violations of Constitutional rights are often of the receiving end of the grievances they file.  The idea that prison officials will cooperate with prisoners properly and thoroughly complete grievance paperwork, as can be inferred by the language in the R&R, is unreasonable and tantamount to expecting that Defendants in civil cases help Plaintiffs to draft complaints against them.

19.     The Court should construe the facts related to whether Tingley complied with the requirement to exhaust his administrative remedies in a light most favorable to Tingley under FRCP 56, find that he did exhaust such remedies, and permit his claim to proceed.

BASED ON THE FOREGOING, the Plaintiff requests that the Court reject the recommendations in the R&R, deny the Defendant's Motion for Summary Judgment, and permit the Plaintiff's cause to proceed to trial on its merits against all Defendants.

RESPECTFULLY submitted this June 16, 2016.

By: _____

Luke Andrew Busby, Ltd.
Nevada State Bar No. 10319
216 East Liberty St.
Reno, NV 89501
775-453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this June 16, 2016, I electronically transmitted the foregoing

pleading to the Clerk's Office using the CM/ECF System for filing and transmittal of a

Notice of Electronic Filing to all counsel registered to receive Electronic Filings and/or

mailed the foregoing pleading via US Mail postage prepaid to the following persons:

Benjamin R. Johnson
Deputy Attorney General
State of Nevada - Office of the Attorney General
Public Safety Division - Bureau of Litigation
100 N. Carson Street - Carson City, NV 89701-4717
E: bjohnson@ag.nv.gov

By: _____
Luke Busby

Exhibit List

1.   Second Level Grievance