UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ADAM WYNN TINGLEY,<br><br>                  Plaintiff,<br>    v.<br>NEVADA DEPARTMENT OF CORRECTIONS, et al.,<br><br>                  Defendants. | Case No. 3:14-cv-00358-MMD-VPC<br><br>ORDER REGARDING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE VALERIE P. COOKE |

**I.      SUMMARY**

Before the Court is the Report and Recommendation of United States Magistrate Judge Valerie P. Cooke (ECF No. 80) ("R&R") relating to Defendants' Motion for Summary Judgment ("Motion") (ECF No. 66). The Court has reviewed Plaintiff's objection (ECF No. 81) and Defendants' response (ECF No. 83). The Court grants Plaintiff's motion to supplement his objection to the R&R (ECF No. 82) in order to consider the recently decided Supreme Court decision of *Ross v. Blake*, 136 S.Ct. 1850 (2016).

**II.     BACKGROUND**

Plaintiff was formerly an inmate in the custody of the Nevada Department of Corrections ("NDOC"). He brings this action pursuant to 42 U.S.C. § 1983, alleging that NDOC and Warm Springs Correctional Center ("WSCC") officials violated his Eighth Amendment right against cruel and unusual punishment by denying Plaintiff timely medical treatment between the years of 2004 and 2014. The Court ultimately permitted

Plaintiff to proceed on a claim of Eighth Amendment deliberate indifference to a serious medical need against former NDOC Medical Director Dr. Bruce Bannister ("Bannister"), WSCC Nurse Susan Hoffman ("Hoffman"), WSCC Nurse Kerry McCulllah ("McCullah"), and WSCC Director of Nursing Jonathan Perry ("Perry"). The relevant background facts, which the Court adopts, are set out in the R&R. (ECF No. 80.)

## III.  LEGAL STANDARD

### A.  Review of Magistrate Judge's Ruling

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). In light of Plaintiffs' objection, the Court has engaged in a *de novo* review to determine whether to adopt Magistrate Judge Cooke's recommendation.

### B.  Summary Judgment

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718

F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

**IV.   DISCUSSION**

The Magistrate Judge recommends granting Defendants' Motion on three bases: (1) the statute of limitations bars certain of Plaintiff's claim against Bannister; (2) during the relevant limitations period, Bannister was not deliberately indifferent to Plaintiff's serious medical needs;[1] and (3) Plaintiff has failed to exhaust his claims as they relate to post-operative care under the Prison Litigation Reform Act ("PLRA"). (ECF No. 80.) Plaintiff's objection addresses all three bases of the Magistrate Judge's recommendation. The Court agrees with the Magistrate Judge's recommendation to dismiss Plaintiff's deliberate indifference claims regarding post-operative care against

///

---

[1] The Court agrees with the Magistrate Judge's analysis but the Court's ruling on the applicability of the continuing violation doctrine may affect the deliberate indifference claim against Bannister.

Hoffman, McCullah, and Perry for failure to exhaust administrative remedies. However, the Court requires oral argument to determine whether the continuing violations doctrine applies to Plaintiff's deliberate indifference claim against Bannister.

### A. Statute of Limitations and the Continuing Violation Doctrine

The R&R recommends that the Court bar certain of Plaintiff's claim against Bannister based upon the statute of limitations. (ECF No. 80 at 5.) Because Defendants acknowledged that Plaintiff exhausted his available administrative remedies on the issue of delayed surgeries, the Magistrate Judge added the 178 days that Plaintiff spent exhausting remedies to the two-year statute of limitations to bar those claims occurring prior to January 10, 2012. (ECF No. 80 at 9-10.) In his objection, Plaintiff disagrees with the Magistrate Judge's finding that each date of the UR Panel's decision triggered a running of the statute of limitations. (ECF No. 81 at 4.) Plaintiff argues the record shows that Bannister in his role on the UR Panel allowed Plaintiff to "languish in pain and relative blindness for years whilst [Plaintiff] waited for surgery." (*Id.*)

Claims brought under 42 U.S.C. § 1983 are governed by the forum state's limitations period for personal injury. *Knox v. Davis*, 260 F.3d 1009, 1012 (9th Cir. 2001). In Nevada, the statute of limitations governing a personal injury claim is two years. *Reed v. Nev. Dep't of Corr.*, No. 3:14-cv-00313-MMD-VPC, 2015 WL 5092692, at *5 (Aug. 27, 2015). "Although state law determines the length of the limitations period, federal law determines when a civil rights claim accrues." *Morales v. City of Los Angeles,* 214 F.3d 1151, 1153-54 (9th Cir. 2000). A § 1983 claim "accrues for limitations purposes when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Knox*, 260 F.3d at 1013. Moreover, because the PLRA, 42 U.S.C. § 1887e(a), requires inmates to exhaust their claims, the statute of limitations is tolled pending completion of the grievance process. *See Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005); *Wisenbaker v. Farwell*, 341 F. Supp. 2d 1160, 1165 (D. Nev. 2004).

The Magistrate Judge found that Plaintiff's deliberate indifference claim against Bannister accrued for limitations purposes after each decision by the UR Panel. (ECF

1  No. 80 at 8.) In particular, Plaintiff identified the following decisions between 2004 and
2  2006 that involved Bannister's participation:

> a. On September 10, 2004[,] Dr. Scott referred the Plaintiff for surgery . . . . This request was disapproved by the UR Panel on September 14, 2004.
>
> b. On December 21, 2004, Dr. Gedney referred the Plaintiff for eye surgery . . . . The UR Panel did not respond to this request in the document in Plaintiff's possession[.]
>
> c. On April 5, 2006, Dr. Gedney again referred the plaintiff for surgery . . . . The UR panel approved the request, but directed the surgery to occur after July 1, 2006. On the same document, the Plaintiff's discharge date is noted as June 3, 2006, before his surgery was to be scheduled.

(ECF No. 73 at 6 (internal citations omitted).) The UR Panel made the following decisions between 2008 and 2013:

> a. On June 26, 2008, Dr. Gedney requested UR Panel approval for the Plaintiff to see Dr. Komadina . . . . The UR Panel disapproved this request on July 15, 2008 without explanation.
>
> b. On January 29, 2010, Dr. Aranas requested UR Panel approval for the Plaintiff to see an ophthalmologist. The UR Panel responded on March 2, 2010 by directing that the Plaintiff be transferred to NNCC to be seen by Dr. Fischer.
>
> c. On March 4, 2014, "V. VanHornal" requested that the Plaintiff be referred to Dr. Fischer due to his pterygium. The UR Panel responded on March 12, 2013 by approving the request.
>
> d. On June 19, 2013, Dr. Gedney then requested that the Plaintiff be referred to Dr. Komadina for his failed pterygium surgery. The UR Panel responded on June 25, 2013 by deferring the request back to Dr. Gedney. On September 23, 2013, Dr. Gedney responded by stating, "I am not an eye specialist UR needs to send [patient] to Dr. Komadina or deny it."

(*Id.* at 9 (internal citations omitted).) The Magistrate Judge, however, found that Plaintiff's challenge stems from "discrete acts" based pon each UR Panel decision and, accordingly, the continuing violation doctrine does not apply to toll the statute of limitations. (ECF No. 80 at 8-9.) However, it is not as evident to the Court that the continuing violation doctrine does not apply, particularly in light of the Ninth Circuit Court of Appeals' finding in *Colwell v. Bannister*, 763 F.3d 1060 (9th Cir. 2014), that NDOC's "one eye policy" was the paradigm of deliberate indifference.

///

5

The continuing violation doctrine applies to § 1983 actions, including claims of deliberate indifference, and allows a plaintiff to seek relief for events outside of the limitations period. *See Knox v. Davis,* 260 F.3d 1009, 1013 (9th Cir. 2001). The doctrine holds that where a violation is ongoing in nature, the statute of limitations does not begin to run until the wrongful conduct ends. *Flowers v. Carville*, 310 F.3d 1118 1126 (9th Cir. 2002). There are two ways in which a plaintiff may establish a continuing violation. First, the plaintiff may highlight a series of related acts against one individual, of which at least one falls within the relevant period of limitations. *Douglas v. California Dept. of Youth Authority*, 271 F.3d 812, 822 (9th Cir. 2001) (citing *Gutowsky v. County of Placer*, 108 F.3d 256, 259 (9th Cir. 1997)). Second, a plaintiff may demonstrate that there is a "systematic policy or practice of discrimination that operated, in part, within the limitations period," such as a systemic violation. *See id.* (citing *Morgan v. Nat'l RR Passenger Corp.*, 232 F.3d 1008, 1015-16 (9th Cir. 2000)). Thus, application of the continuing violation doctrine in the context of deliberate indifference claims requires a fact-specific analysis. *See, e.g., Evans v. County of San Diego*, No. 06-CV-0877, 2008 WL 842459 at *12 (S.D. Cal. Mar. 27, 2008) (applying the continuing violation doctrine to plaintiff's deliberate indifference claim, which was not based on plaintiff's original injury but instead was based on the defendants' ongoing failure to treat the injury); *see also Watson v. Sisto*, No. 2:07-cv-01871, 2011 WL 533716 at *5 (E.D. Cal. Feb. 14, 2011) (applying continuing violation doctrine to plaintiff's claim that the prison health system as administered by doctors and staff, consistently failed to provide adequate medical care for plaintiff's back condition).

While the alleged deliberate indifference conduct ended in Plaintiff's case when he received the second surgery in 2014, it is unclear from the record whether the delays in receiving this surgery were the result of a systemic policy. The UR Panel's decisions cited above do not provide a reason for denying Plaintiff's request. It is not clear based on the record before the Court whether the UR Panel's decisions were based on NDOC's policy that "one eye is good enough for prison inmates" and required "blanket,

6

categorical denial[s] of medically indicated surgery." *See Colwell,* 763 F.3d at 1063. If the basis for delaying and denying Plaintiff's second eye surgery until 2014 was this policy, then the continuing violation doctrine may apply to permit the claim against Bannister to proceed. Accordingly, the Court determines that oral argument on the application of the continuing violation doctrine will assist the Court in addressing Defendants' statute of limitations argument.

### B.     Failure to Exhaust under PLRA and *Ross v. Blake*

The R&R recommends that the Court find that Plaintiff failed to exhaust available administrative remedies relating to the issue of his post-operative treatment. (ECF No. 80 at 18.) Under the PLRA, a § 1983 claim may not be brought by a prisoner until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a). Exhaustion requires that an inmate use all procedures the prison "holds out," *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009), including compliance with agency deadlines and other critical procedural rules, *Woodford v Ngo*, 548 U.S. 81, 90-91 (2006). The level of detail required in an administrative grievance is determined by the prison's applicable procedures. *Morton v. Hall*, 599 F.3d 942, 926 (9th Cir. 2010).

In Plaintiff's objection, he argues that he did, in fact, exhaust the administrative remedies under NDOC's grievance process because he raised the issue of his post-operative treatment in a second-level grievance. (ECF No. 81 at 10, 13.) By raising the issue of post-operative care for the first time in a second-level grievance, Plaintiff did not conform to the requirements under NDOC's Administrative Regulation ("AR") 740.[2] While

---

[2] NDOC's grievance process for medical claims is governed by AR 740 and has three levels. First, an inmate must file an informal grievance within six months of the claim. AR 740.04, 740.05(4). Prison officials must respond to the informal grievance within 45 days. AR 740.05(4). If an inmate is dissatisfied with the informal response, he may appeal to the first formal level within five days. *Id.* At the first formal level, the inmate must "provide a signed, sworn declaration of facts that form the basis for a claim that the informal response is incorrect," and attach "additional relevant documentation." AR 740.06(2). The first level formal grievance is then reviewed by a high level official and decided within forty-five days. AR 740.06(10), (4). The inmate may appeal the high-level official's decision within five days of receiving the official's response. AR 740.07(1). In response to this second-level formal grievance, an official must respond within 60 days specifying the reasons for the decision reached. AR 740.07(3), (4). At that point, the inmate is considered to have exhausted all available administrative remedies.

the Court finds that AR 740 provides little guidance as to the factual specificity required of an inmate when filing a grievance (ECF Nos. 80 at 17 & 81 at 11-12), Plaintiff is wrong that the lack of guidance in the AR made it impossible for Plaintiff to file a separate grievance regarding the issue of post-operative care. ( ECF No. 82 at 3.)

When an administrative grievance procedure is silent or incomplete as to how specific an inmate must be, a grievance will suffice if it puts the prison on notice of the nature of the wrong and what remedy is sought by the inmate. *See Griffin,* 557 F.3d at 1120. The informal grievance Plaintiff filed on October 26, 2013, identified a failure to receive medically necessary eye surgery, requested a second eye surgery, and asked that Plaintiff remain in close proximity to the physician performing that surgery until the surgery occurred. (ECF No. 66-12 at 16-17.) In the first-level grievance, Plaintiff requested surgery once again and added that he also receive whatever post-operative care his physician recommended (including UV sunglasses), that he not be retaliated against for making a deliberate indifference claim, and that he receive compensation for NDOC's failure to grant him a second eye surgery. (Id. at 10-11.) After his surgery, Plaintiff filed a second-level grievance regarding the initial delay in receiving this second eye surgery and Plaintiff's continued need to receive post-operative care, including pain medicine and eye drops. (ECF No. 66-13 at 3.) The response to this grievance by prison officials did not make reference to the post-operative request for eye drops because, as Defendants contend, it was not raised initially as an issue in the first informal grievance, which is required under AR 740. (ECF. No. 81 at 10.) More specifically, the request for eye drops in the second-level grievance does not state the nature of any wrong done to the Plaintiff. According to the grievance itself, the wrong to Plaintiff was the failure to receive surgery and medical care in a timely fashion. (ECF No. 66-12 at 5.) It appears his request to receive continued medical care after his second surgery was an additional remedy requested for the specific wrong of delayed surgery. However, Plaintiff's Eighth Amendment claims against Hoffman, McCullah, and Perry are their failure to provide the correct prescription and dosage of eye drops in a timely manner, which is a separate

wrong that was not clearly raised by Plaintiff in any stage of the grievance process. Thus, the Court agrees with the Magistrate Judge's finding that Plaintiff did not exhaust his administrative remedies with respect to these Defendants.

In the alternative, Plaintiff argues that the circumstances of his situation rendered administrative remedies effectively unavailable. (ECF No. 81 at 13-14.) In his Objection, Plaintiff highlights that under the PLRA the very notion of an internal grievance process is absurd given that inmates must submit grievances for review to the very prison officials who they are filing grievances against. (*Id.* at 4.) First, because Plaintiff's assertion assumes an inherent conflict of interest in the framework of the PLRA, it does not in-and-of-itself present a justiciable matter for this Court. Second, Plaintiff's potential grievance pertains to medical personnel affiliated with the prison, not the behavior of the reviewing officials, so the conflict of interest presumption does not automatically apply. Additionally, Plaintiff attempts to argue that all three manifestations of "unavailability" in *Ross* apply to make exhaustion "unavailable" in his case.[3] (ECF 82 at 3.) The Court, however, does not find the circumstances of Plaintiff's situation to meet the definition of "unavailability" in any of the instances identified by the Supreme Court in *Ross*.

In *Ross v. Blake*, the Supreme Court found three kinds of circumstances in which an "administrative remedy, although officially on the books, is not capable of use" by an inmate to obtain relief. *Ross*, 136 S.Ct. 1850. The first is where the administrative procedure is a dead end because officers are unwilling to provide any relief to aggrieved inmates. *Id.* at 1859. While subjectively Plaintiff may have been afraid that filing an informal grievance related to the failure of certain medical personnel to provide him the correct and timely post-operative eye drops would subject him to discipline (ECF No. 82 at 3), it is clear that the prior grievance Plaintiff filed was addressed. Thus, it is not absolutely the case that the grievance process at NDOC is a dead end because Plaintiff

---

[3] Plaintiff filed a Motion to Supplement his Objection to include the recently decided Supreme Court decision of *Ross v. Blake*, 84 USLW 4352, which addresses three ways in which an administrative procedure may be unavailable for exhaustion purposes under the PLRA. (ECF No. 81 at 13-14 & 82 at 2-3.)

had his second eye surgery, which is the remedy Plaintiff requested in his October 2013 informal grievance. Furthermore, medical records submitted by Defendants show that Plaintiff did receive post-operative care (ECF Nos. 67-2, 67-3, 67-5, 67-6, 67-7), as requested in the first- and second-level grievances he filed (ECF No. 66-13 at 3).

The second circumstance in which an administrative remedy is effectively unavailable is where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use" such that "no ordinary prisoner can navigate it." *Ross*, 136 S.Ct. at 1859. While the Court agrees with both the Magistrate Judge and Plaintiff that the specificity requirement under AR 740 is not clearly defined, which may in turn make it difficult to understand, the administrative process itself is not so opaque that no ordinary prisoner could use it. In fact, Plaintiff used the procedure to file a grievance and was notified when he failed to comply with particular requirements of the grievance process. (ECF No. 67-1 at 4.) Furthermore, Congress has determined that when an administrative process is susceptible to multiple reasonable interpretations, which Plaintiff admits is possible here (ECF No. 81 at 12), the inmate still must err on the side of exhaustion. *Ross*, 136 S.Ct. at 1859.

Finally, the third circumstance in which an administrative remedy is effectively unavailable is when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation. *Id.* at 1860. The Supreme Court references cases where prison officials devise procedural systems that are impossible for all but the most skilled prisoners to comply with or instances where officials have misled or threatened individual inmates in order to prevent their use of otherwise proper procedures. *Id.* By contrast, Plaintiff has used the grievance procedure without any identified hindrances; in fact, officials gave Plaintiff instructions on how to properly comply with the grievance procedure when he mistakenly filed the wrong form. And while Plaintiff's grievance was denied, the remedy sought was actually granted. Plaintiff highlights a subjective concern with potential discipline because of the ambiguity of a term in the written policy. But he does not identify any threats from prison officials that if

he filed a grievance about the failure to receive his post-operative eye drops he would be punished. Thus, the Court cannot find that the administrative procedures were effectively unavailable under the parameters of *Ross*.

## V.     CONCLUSION

It is therefore ordered, adjudged and decreed that the Report and Recommendation of Magistrate Judge Valerie P. Cooke (ECF No. 80) be accepted and adopted in part. It is adopted with respect to the Magistrate Judge's finding that Plaintiff failed to exhaust his administrative remedies with respect to claims against Hoffman, McCullah and Perry. Defendants' Motion for Summary Judgment (ECF No. 66) is granted with respect to the deliberate indifference claims against Hoffman, McCullah, and Perry.

The Court will set a hearing to address the R&R's recommendation relating to the statute of limitations as applied to the claim against Bannister.

DATED THIS 29th day of September 2016.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE